UNITED STATES, Appellee

v.

Jaime J. PINERO, Cryptologic Technician Administrative Second
Class
U.S. Navy, Appellant

No. 03-0279

Crim. App. No. 200101373

United States Court of Appeals for the Armed Forces

Argued October 8, 2003

Decided June 21, 2004

BAKER, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., GIERKE, EFFRON, and ERDMANN, JJ., joined.


Counsel

For Appellant:  Captain James D. Valentine, USMC (argued).

For Appellee:  Lieutenant Frank L. Gatto, JAGC, USNR (argued);
Commander R. P. Taishoff, JAGC, USN (on brief); Colonel Rose M.
Favors, USMC, and Captain Glen R. Hines, USMC.



Military Judge: R. W. Redcliff



**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE PUBLICATION**.

Judge BAKER delivered the opinion of the Court.

In accordance with his pleas, Appellant was convicted by a military judge at a special court-martial of unauthorized absence terminated by apprehension and five specifications of wrongful use of a controlled substance in violation of Articles 86 and 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 886 and 912a (2000). The adjudged and approved sentence provided for a bad-conduct discharge, confinement for 72 days, and reduction to pay grade E-1. The United States Navy-Marine Corps Court of Criminal Appeals affirmed. United States v. Pinero, 58 M.J. 501 (N-M. Ct. Crim. App. 2003)(en banc). We granted review of the following question:

> WHETHER THE MILITARY JUDGE COMMITTED PLAIN ERROR BY ACCEPTING APPELLANT'S GUILTY PLEA TO AN UNAUTHORIZED ABSENCE IN EXCESS OF THIRTY DAYS WHEN APPELLANT WAS SUBJECT TO MILITARY CONTROL AND CUSTODY DURING A PORTION OF THE CHARGED PERIOD.

Appellant was charged with and pleaded guilty to a 53-day period of unauthorized absence. However, Appellant testified, and the military judge concluded, that he returned to military control and authority at some point during this period of unauthorized absence before initiating a second period of unauthorized absence. As a result, the record of trial demonstrates a substantial basis in law and fact to question Appellant's plea to a 53-day period of unauthorized absence.

2

Although the legal error committed by the military judge in this case may not have prejudiced Appellant on sentencing in light of his other convictions, our recent decision in United States v. Jenkins, ___ M.J. ___ (C.A.A.F. 2004), requires that we remand to allow the Court of Criminal Appeals to complete its review pursuant to Article 66, UCMJ 10 U.S.C. § 866 (2000), consistent with this opinion and with Jenkins.

BACKGROUND

Appellant entered a guilty plea to a period of unauthorized absence from his unit, Naval Security Group Activity, Kunia, Hawaii, that began on October 23, 2000, and was terminated by apprehension on December 15, 2000. During the providence inquiry, Appellant stated that at some time in mid-November and prior to Thanksgiving, a petty officer second class (E-5) from his command came to his off-base house and ordered him to participate in a command-directed fitness-for-duty urinalysis screening. According to Appellant, he dressed in his uniform and proceeded with the command representative to the Makalapa Medical Clinic at Pearl Harbor and then returned home. This evolution took approximately five hours, and Appellant stated that he did not thereby intend to terminate his absence. Appellant did not report for duty the following day as directed by the command representative. By Appellant's admission, his

3

absence ended on December 15 when he was apprehended at his house.

Based on this record, the judge stated:

> It would appear that at least for a 5-hour period during the [unauthorized absence] period, Petty Officer Pinero was subject to military control and authority. He certainly complied with an order issued by his commanding officer to participate in a urinalysis and blood sample screening, and that would apparently . . . terminate the unauthorized absence at that point. And when he was ordered to report for duty the next day, that would appear to commence a second period of unauthorized absence, which was subsequently terminated by his apprehension on 15 December.

However, lacking a factual basis to determine the precise day on which the first absence ended and the second began, the judge found "as a matter in extenuation that during the period of unauthorized absence, at least for 5 hours, Petty Officer Pinero did subject himself to military custody and control and would not, in fact, have been an unauthorized absentee for that period."

The judge solicited counsels' opinions on how to proceed and whether the pretrial agreement remained undisturbed. Trial counsel adopted the judge's suggestion that even if the precise date of the urinalysis was not determined, the agreement was still binding because "[i]t's certainly proper for the court to find two short periods of [unauthorized absence] encompassed in a single extensive period." The military judge further

4

suggested that "even though there's [sic] two periods, he's still, I think, technically UA during every day of that period."

The court recessed to explore the significance of the five-hour period. Counsel were unable to fix the date of the urinalysis or otherwise confirm Appellant's presence at the clinic in November. Ultimately, trial defense counsel adopted the military judge's theory that the charged period was appropriate and stated that "[w]e want to stick with the deal and ask you to consider whatever extenuation the providence inquiry may have elicited."

In affirming, the Court of Criminal Appeals concluded that the five-hour period was "a de minimis interruption of the alleged [unauthorized absence]." 58 M.J. at 503. The court further concluded that Appellant waived the defense of early termination since he lacked the intent to terminate his unauthorized absence, and that there was no material prejudice to Appellant's substantial rights because "Appellant was not misled as to the charge, and no unfairness resulted as the variance did not increase his punitive exposure." Id. at 504.

The Government's Answer before the lower court contained 59 lines of legal analysis. The CCA's en banc opinion replicates 48 of those lines verbatim or with modest grammatical or citation edits. Another six lines appear with more substantial modification. This material appeared in 8 of the CCA's 13

paragraphs of legal analysis.  But the lower court's conclusions regarding waiver of available defenses and whether a de minimis absence was consistent with this Court's holding in United States v. Francis, 15 M.J. 424, 429 (C.M.A. 1983), were not based on the Government's Answer.

### DISCUSSION

The military justice system takes particular care to test the validity of guilty pleas because the facts and the law are not tested in the crucible of the adversarial process.  Further, there may be subtle pressures inherent to the military environment that may influence the manner in which servicemembers exercise (and waive) their rights.  The providence inquiry and a judge's explanation of possible defenses are established procedures to ensure servicemembers knowingly and voluntarily admit to all elements of a formal criminal charge.  See, e.g., United States v. Care, 18 C.M.A. 535, 539, 40 C.M.R. 247, 251 (1969)(citing McCarthy v. United States, 394 U.S. 459, 466 (1969)); United States v. Chancelor, 16 C.M.A. 297, 299, 36 C.M.R. 453, 455 (1966)("Congress made clear the nature of the safeguards which they intended to surround the receiving of [guilty pleas].").  These procedures have also been incorporated into the Rules for Courts-Martial [hereinafter R.C.M.] and the guides for courts-martial.  See R.C.M. 910(e) and discussion; Manual for Courts-Martial, United

6

States (2002 ed.) [hereinafter MCM], Guide for General and Special Courts-Martial A8-1; MCM, Guide for Summary Courts-Martial A9-1.

We are cognizant that in guilty-plea cases the quantum of proof is less than that required at a contested trial. Before accepting a plea, due process requires a military trial judge to question the accused "to make clear the basis for a determination by the military judge or president whether the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty." Care, 18 C.M.A. at 541, 40 C.M.R. at 253. See R.C.M. 910(e). A plea of not guilty must be entered where a "substantial indication of direct conflict between the accused's plea and his following statements" arises. United States v. Logan, 22 C.M.A. 349, 351, 47 C.M.R. 1, 3 (1973). Within this framework, guilty pleas are rejected on appellate review only when the record of trial shows a substantial basis in law and fact for questioning the plea. United States v. Jordan, 57 M.J. 236 (C.A.A.F. 2002); United States v. Prater, 32 M.J. 433 (C.M.A. 1991).

"Where an accused's responses during the providence inquiry suggest a possible defense to the offense charged, the trial judge is well advised to clearly and concisely explain the elements of the defense in addition to securing a factual basis to assure that the defense is not available." United States v.

Jemmings, 1 M.J. 414, 418 (C.M.A. 1976). Also, "in a guilty plea case, inconsistencies and apparent defenses must be resolved by the military judge or the guilty pleas must be rejected." United States v. Outhier, 45 M.J. 326, 331 (C.A.A.F. 1996)(citing Jemmings, 1 M.J. at 418; United States v. Dunbar, 20 C.M.A. 478, 43 C.M.R. 318 (1971)).

In the context of Article 86, the elements of the offense often include an aggravating factor of duration that bears on the maximum authorized punishment. Appellant was charged with a 53-day period of continuous unauthorized absence. However, Appellant's statements regarding the interruption of his absence created a substantial basis to question the providence of his guilty plea because termination in this case is a defense to an absence exceeding 30 days. The military judge seemed to recognize as much when he concluded that a second period of unauthorized absence commenced following the command-directed urinalysis screening. Termination was not merely a "possible" defense here — the judge secured a factual basis establishing that Appellant was, for a five-hour period, not guilty of unauthorized absence. For these reasons, we hold that there was a substantial basis in law and fact to question Appellant's guilty plea to a 53-day unauthorized absence.

Having found that Appellant was under military control and custody and not absent on a date in November, it was incumbent

upon the military judge to resolve any conflicting facts so the correct duration could be determined and counsel could decide how to proceed regarding the remainder of the charged period. Notwithstanding Appellant's return to military control, the judge and counsel attempted to preserve the pretrial agreement by finding a continuous 53-day absence based on the fact that Appellant was not present for duty for the entire day of the urinalysis. However, the hours of departure and return were not alleged, therefore, the unresolved termination date would have counted as a day of duty. MCM, Part IV, para. 10.(c).(9). Therefore, as a matter of law, on this record, the date of the urinalysis could not have sufficed as both the termination date of the first period of absence and the inception date for any subsequent period. Thus, the military judge's conclusion that Appellant was "technically UA during every day of that period" was erroneous.

As important, even if Appellant's absence had been charged from a specific hour, Appellant's unauthorized absence could not have been continuous. A military judge may find multiple absences within a single charged period so long as the maximum authorized punishment does not exceed that for the longer period. Francis, 15 M.J. at 429. Under Francis there must be a factual basis to support the inception date of a second absence where that date is essential to calculating the legal

9

punishments for Article 86 violations.  That is, without an inception date it is impossible to know whether duration is an aggravating factor.

A factual interruption in a continuous period of unauthorized absence cannot be overlooked by a court where such interruption changes the qualitative nature of the offense and the punitive exposure.  Moreover, whether there is incentive to do so or not, a servicemember cannot plead guilty to an offense he did not commit, in this case 53 days of continuous unauthorized absence.  United States v. Schwabauer, 37 M.J. 338 (C.M.A. 1993); United States v. Lewis, 18 C.M.A. 287, 289, 39 C.M.R. 287, 289 (1969)(An accused may not "abandon evidence of a defense in favor of possible advantages derived from a guilty plea.").  Acceptance of Appellant's plea in this case may prove to be harmless, but it was still error to accept the plea and we should not conflate that which is harmless with that which is de minimis in our analysis.

The record of trial establishes sufficient facts to affirm Appellant's conviction for an unauthorized absence of some lesser period.  United States v. Harris, 21 C.M.A. 590, 593-94, 45 C.M.R. 364, 367-68 (1972).  Notwithstanding counsels' inability to establish the early termination date, such a date may be established by facts elicited during Appellant's plea inquiry.  United States v. Simmons, 3 M.J. 398 (C.M.A. 1977).

There is a factual basis on this record to support a nine-day absence beginning October 23 and terminating on November 1, the earliest date Appellant could have terminated his absence based on the plea colloquy. The failure of the military judge to conclusively establish the date on which Appellant was under military control at the clinic leaves the inception date for any additional unauthorized absence period unresolved. Thus, the current state of the record does not support a conviction for an absence extending beyond November 1. See, e.g., Harris, 21 C.M.A. at 593, 45 C.M.R. at 367 ("Proof of a date of inception obviously is indispensable to a successful prosecution for unauthorized absence if a conviction is to be had for an unauthorized absence which exceeds one day, the proven date of return."). Therefore, the military judge's acceptance of the plea and his subsequent finding of guilty were error.

Regarding prejudice, in his brief to this Court Appellant argues that "the maximum punishment for an unauthorized absence in excess of thirty days is dramatically more significant than even twice the maximum punishment for an absence of less than 30 days." He also argues that a punitive discharge is not an authorized punishment for an unauthorized absence not exceeding 30 days. Moreover, termination by apprehension is only relevant in aggravation for unauthorized absence over 30 days. While we agree with Appellant that these are indeed accurate statements

of the law, the argument ignores the fact that Appellant was tried at a special court-martial. Even without the absence offense, the aggregation of the other offenses to which Appellant pleaded guilty exposed Appellant to the jurisdictional maximum of a special court-martial.[1]

## DECISION

In light of our conclusions above, the decision of the United States Navy-Marine Corps Court of Criminal Appeals is set aside. As review is not yet complete in accordance with our decision in United States v. Jenkins, ___ M.J. ___ (C.A.A.F. 2004),[2] the record of trial is returned to the Judge Advocate General of the Navy for remand to the Court of Criminal Appeals for review consistent with this opinion. Thereafter, Article 67, UCMJ, 10 U.S.C. § 867 (2000), shall apply.

---

[1] At the time of Appellant's trial Rule for Courts-Martial 201(f)(2)(B) authorized a special court-martial to adjudge no more than a bad-conduct discharge, confinement for six months, and forfeitures of two-thirds pay per month for six months.

[2] Although not assigned or specified as an issue, we note that the lower court's opinion in this case contains substantial replication from the Government's brief.