EFFRON, Chief Judge, with whom ERDMANN, Judge,
joins (dissenting):
Appellant’s assertion that he suffered from bipolar disorder raised an apparent inconsistency with respect to his plea, thereby triggering the military judge’s duty to conduct a further inquiry. United States v. Phillippe, 63 M.J. 307, 309-11 (C.A.A.F.2006). The military judge erred in failing to resolve this inconsistency. Accordingly, I respectfully dissent.
I. BACKGROUND
A. The Guilty Plea Process
Congress has established special procedures to ensure the validity of guilty pleas in the military justice system. Article 45(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 845(a) (2000), provides that the trial court shall enter a plea of not guilty, despite the accused’s guilty plea, if the accused “after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect....”
Rule for Courts-Martial (R.C.M.) 910(h)(2) underscores the military judge’s obligation by requiring that “[i]f after findings but before the sentence is announced the accused makes a statement to the court-martial, in testimony or otherwise, or presents evidence which is inconsistent with a plea of guilty on which a finding is based, the military judge shall inquire into the providence of the plea.” Our Court has noted the importance of requiring special attention to guilty pleas in the military justice system because “ ‘there may be subtle pressures inherent to the military environment that may influence the manner in which servicemembers exercise (and waive) their rights.’ ” Phillippe, 63 M.J. at 310 (quoting United States v. Pinero, 60 M.J. 31, 33 (C.A.A.F.2004)). “ ‘The providence inquiry and a judge’s explanation of possible defenses are established procedures to ensure servicemembers knowingly and voluntarily admit to all elements of a formal *465 charge.’ ” Id. (quoting Pinero, 60 M.J. at 33).
13. Plea Inquiries Involving Mental Responsibility
In a contested trial, the defense of lack of mental responsibility requires the accused to demonstrate that, at the time of the alleged offenses, the accused: (1) suffered from a severe mental disease or defect, and (2) as a result of that disease or defect was unable to appreciate the nature and quality or the wrongfulness of the charged acts. Article 50a(a), UCMJ, 10 U.S.C. § 850a(a) (2000). In the context of a providence inquiry, however, the responsibility for assessing whether there is reason to believe that the defense may arise rests with the military judge. R.C.M. 706(a) provides in pertinent part that:
If it appears to [the] ... military judge ... that there is reason to believe that the accused lacked mental responsibility for any offense charged or lacks capacity to stand trial, that fact and the basis of the belief or observation shall be transmitted through appropriate channels to the officer authorized to order an inquiry into the mental condition of the accused.
A statement by the accused triggers the military judge’s responsibility to conduct a further inquiry when it raises the possibility that a defense may apply. The accused’s statement need not assert a complete defense. Phillippe, 63 M.J. at 310. Rather, it must only “set[ ] up matter raising a possible defense.” Id.; Article 45(a), UCMJ.
Once a statement by the accused raises the possibility that a defense may apply, the military judge has an affirmative obligation to resolve any apparent ambiguity or inconsistency by conducting further inquiry. Article 45(a), UCMJ. If, upon such inquiry, it appears that the accused may have a defense of lack of mental responsibility or may lack mental capacity at the time of trial, the military judge must determine whether to order psychological testing by a sanity board. R.C.M. 706(a); R.C.M. 916(k)(3)(B). This obligation distinguishes lack of mental responsibility from other affirmative defenses. See generally R.C.M. 916(k) (the military judge is not required to assess the need for specialized, nonjudicial evaluation for any affirmative defense except lack of mental responsibility).
II. APPELLANT’S TRIAL
The charged offenses concerned events that transpired between March 10, 2002, and April 11, 2002. Appellant pled guilty to the charged offenses at a special court-martial before a military judge sitting alone. At the start of the proceedings, the military judge summarized an off-the-record conference conducted under R.C.M. 802, during which the parties discussed “potential [extenuation and mitigation] evidence requested by the defense, the medical records of the accused, and it not having arrived yet, and what we would do about that.” The record supplies no further information about the medical records, including whether the military judge was informed of their contents and the reasons why counsel thought the medical records would be useful in extenuation and mitigation.
Following the summary of the R.C.M. 802 session, Appellant entered pleas of guilty to all charges and the military judge conducted a providence inquiry. Appellant said nothing during the providence inquiry that would have led the military judge to question his mental capacity or mental responsibility. The military judge accepted Appellant’s pleas as provident and found him guilty of all charges and specifications.
During the sentencing proceedings, Appellant made an unsworn statement under R.C.M. 1001(c)(2)(C), in which he recounted the injuries he sustained in an assault that occurred on November 20, 2001, approximately four months before the dates of the charged offenses. Appellant stated that he was hit repeatedly in the left side and back of the skull with a lead pipe during the assault. According to Appellant, he lost consciousness after the first blow and fell to the concrete floor. Appellant regained consciousness four or five days after the attack. He spent the next three weeks in the Hunter McGuire Veterans Hospital in recovery.
*466 Appellant’s injuries included an inner skull fracture on the left side of his head, a second fracture on the back of the skull, a contusion to the front of the brain, bleeding and swelling to the back of the brain, complete deafness in his left ear, partial blindness in his left eye, and memory loss. Upon returning to his unit, Appellant met with a psychiatrist and was diagnosed with bipolar syndrome. At the time of the charged offenses, he was awaiting a medical discharge because his injuries prevented him from sufficiently performing his duties.
Upon conclusion of the statement, the military judge thanked Appellant. The military judge made no further comment on the statement before proceeding to hear argument on sentencing.
III. DISCUSSION
A statement by the accused need not set up a complete defense in order to trigger the obligation of the military judge to conduct a further inquiry. The obligation arises if the statement by the accused “‘sets up matter inconsistent with the plea.’ ” United States v. Prater, 32 M.J. 433, 436 (C.M.A.1991) (quoting Article 45(a), UCMJ).
In Phillippe, we addressed the issue of “whether the military judge should have inquired further into the providence of Appellant’s plea, in light of his unsworn statement.” 63 M.J. at 310. We emphasized that:
Even if an accused does not volunteer all the facts necessary to establish a defense, if he sets up matter raising a possible defense, then the military judge is obligated to make further inquiry to resolve any apparent ambiguity or inconsistency. Only after the military judge has made this inquiry can he then determine whether the apparent inconsistency or ambiguity has been resolved.
Id. (citing Prater, 32 M.J. at 436) (emphasis added).
Appellant told the military judge that he had been diagnosed with bipolar disorder. When Appellant made this statement, the military judge was placed on notice that Appellant might suffer from a severe mental disease or defect within the meaning of Article 50a(a), UCMJ. See United States v. Harris, 61 M.J. 391, 394, 398 (C.A.A.F.2005); United States v. Martin, 56 M.J. 97, 100, 103 (C.A.A.F.2001) (recognizing that bipolar disorder may constitute a severe mental disease or defect). Particularly in the context of Appellant’s description of the assault that he had suffered, his statement fell squarely within the spectrum of matters requiring further exploration by the military judge because it set up a “matter inconsistent with the plea.” Article 45(a), UCMJ.
At this point, the military judge was confronted with two key questions. First, whether Appellant’s bipolar disorder was of sufficient gravity to constitute a severe mental disease or defect. Second, if Appellant did suffer from a severe mental disease or defect, whether that disease or defect caused him to fail to understand the nature and quality or wrongfulness of his acts. Article 50a(a), UCMJ.
Once Appellant raised his inconsistent statement, the military judge could have pursued one of three options. First, he could have conducted an inquiry regarding Appellant’s bipolar disorder with Appellant or trial defense counsel that satisfied the military judge that the defense of lack of mental responsibility did not apply. R.C.M. 916(k)(3)(B). If, after conducting such an inquiry, he determined that the defense did not apply, he could resume the sentencing proceedings on the basis that the plea was provident. Second, he could have ordered a sanity board pursuant to R.C.M. 706(a) to explore whether the defense of lack of mental responsibility applied. Third, if the military judge determined that the lack of mental responsibility defense did in fact apply, he could have permitted Appellant to withdraw his plea under Article 45(a), UCMJ, and R.C.M. 910(h)(2) and proceed to trial on the merits.
The military judge erred in failing to adhere to the requirements for a further inquiry under R.C.M. 706(a) and 910(h)(2). As a result, we are not in a position to determine which of the above three options would have been appropriate absent this error. As we *467 stated in Phillippe, before a court can determine that the defense in question applies, “there must be adequate facts on the record.” 63 M.J. at 310 n. 3. Under these circumstances, we should set aside the findings and sentence and authorize a rehearing at which these options could be properly evaluated.